**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JARED GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-00416-JED-FHM |
| | ) | |
| (1) TRAVELERS PROPERTY | ) | |
| CASUALTY COMPANY OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S**
**<u>MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT</u>**

Derrick T. DeWitt, OBA #18044
Melanie K. Dittrich, OBA #30846
L. Grant Gibson, OBA #33513
DeWITT PARUOLO & MEEK, PLLC
P.O. Box 138800
Oklahoma City, OK  73113
T: (405) 705-3600
F: (405) 705-2573
*Attorneys for Defendant*
*Travelers Property Casualty Company of America*

DATE:  August 19, 2020

## TABLE OF CONTENTS

STATEMENT OF THE CASE........................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ..................................................................... 2

ARGUMENT AND AUTHORITY .................................................................................. 10

    PROPOSITION I:  TRAVELERS IS ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFF'S BAD FAITH CLAIM BECAUSE TRAVELERS HAD A REASONABLE
    BASIS FOR ITS ACTIONS ...................................................................................... 11

        A.  Travelers' original disclaimer of coverage was justifiable and reasonable based on the
           information available at the time the decision was made. ............................................. 13

        B.  A legitimate disputed existed as to the value of Plaintiff's claim. ............................... 15

    PROPOSITION II:  TRAVELERS DID NOT BREACH THE INSURANCE CONTRACT
    BECAUSE IT PAID THE POLICY BENEFIT IN FULL ....................................................... 16

    PROPOSTION III:  PUNITIVE DAMAGES ARE NOT WARRANTED AS NO CONDUCT
    OF TRAVELERS GIVES RISE TO ANY INSTRUCTION ................................................... 18

CONCLUSION.............................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 11

*Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080 (Okla. 2005) ....................................................... 12

*Bailey v. Farmers Ins. Co., Inc.*, 137 P.3d 1260 (Okla. Civ. App. 2006)..................................... 13

*Ball v. Wilshire Ins. Co.*, 221 P.3d 717 (Okla. 2009) .................................................................... 12

*Beers v. Hillory*, 241 P.3d 285 (Okla. Civ. App. 2010)............................................................ 12, 13

*Buzzard v. McDanel (Buzzard I)*, 736 P.2d 157 (Okla. 1987) ....................................................... 12

*Buzzard v. Farmers Ins. Co., Inc. (Buzzard II)*, 824 P.2d, 1105 (Okla. 1991) ................. 13, 16, 19

*Carney v. State Farm Mut. Auto. Ins. Co.*, 877 P.2d 1113 (Okla. 1994)...................................... 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 10

*Christian v. Amer. Home Assur. Co.*, 577 P.2d 899 (Okla. 1977) ................................................ 11

*Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357 (Okla. 1989)........................................ 11

*Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834 (Okla. 2001)................................ 16

*Hale v. A.G. Ins. Co.*, 138 P.3d 567 (Okla. Civ. App. 2006)......................................................... 12

*Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760 (Okla. 1984) .................................................. 13, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................................... 11

*McLaughlin v. Nat'l Ben. Life Ins. Co.*, 772 P.2d 383 (Okla. 1988)............................................ 19

*Nematpour v. GEICO Gen. Ins. Co.*, 2016 WL 9022866 (W.D. Okla. June 21, 2016)............... 18

*Newport v. USAA*, 11 P.3d 190 (Okla. 2000).......................................................................... 12, 14

*Norman's Heritage Real Estate Co. v. Aetna Cas. & Sur. Co.*, 727 F.2d 911 (10th Cir. 1984)... 18

*Owens v. Res. Life Ins. Co.*, 2007 WL 2607845 (N.D. Okla. 2007)............................................. 17

*Skinner v. John Deere Ins. Co.*, 998 P.2d 1219 (Okla. 2000)....................................................... 12

*Tran v. Nationwide Mut. Ins. Co.*, 2012 WL 380359 (N.D. Okla. Feb. 6, 2012) ................... 12, 18

*Watson v. Farmers Ins. Co., Inc.*, 23 F. Supp.3d 1342 (N.D. Okla. 2014) ............................ 17, 18

*White v. York Int'l Corp.*, 45 F.3d 357 (10th Cir. 1995) ................................................. 11

**Statutes**

23 O.S. § 9.1 ................................................................................................................ 18

**Other Authorities**

OUJI 23.21 ................................................................................................................... 16

**Rules**

Fed.R.Civ.P. 56 .............................................................................................................. 1

LCvR56.1 ....................................................................................................................... 1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JARED GRAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-00416-JED-FHM |
| | ) | |
| (1) TRAVELERS PROPERTY | ) | |
| CASUALTY COMPANY OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Travelers Property Casualty Company of America ("Travelers"), pursuant to Fed.R.Civ.P. 56 and LCvR56.1, hereby respectfully moves the Court for Summary Judgment in its favor and against Plaintiff Jared Graves ("Plaintiff") as there is no substantial controversy as to any material fact, and Travelers is entitled to judgment as a matter of law. In support thereof, Travelers provides the following Brief.

## STATEMENT OF THE CASE

This litigation arises out of a claim for uninsured motorist benefits submitted by Plaintiff under a commercial automobile policy between his employer, Hahn Appliance Center, Inc. ("Hahn"), and Travelers, following an automobile accident on September 6, 2017. On that date Plaintiff was a passenger in a commercial delivery truck leased by Hahn and operated by an employee of Hahn who, along with Plaintiff, was using the truck in the normal course of Hahn's business. Plaintiff was involved in an accident while working for Hahn which caused him significant permanent bodily injury.

Travelers had in place at the time of the accident a commercial automobile insurance policy issued to Hahn, the named insured.  On December 21, 2017, Plaintiff, through counsel,

submitted an UM/UIM claim to Travelers arising out of the September 6, 2017 accident. Travelers initially disclaimed coverage for Plaintiff's UM claim because, unbeknownst to Travelers, the lease agreement provided by Hahn to Travelers was incomplete. The reason for the disclaimer was that pursuant to the terms of the Policy, UM coverage for non-owned autos only applied if there was a lease agreement with the insured which required Hahn provide direct primary insurance for the lessor. Since the lease agreement provided by Hahn did not contain the required language regarding direct primary insurance, there was no UM coverage for Plaintiff. However approximately two (2) months later Hahn provided the full lease agreement, and after review, the requisite language was contained in the lease and Travelers immediately afforded UM benefits to Plaintiff.

Plaintiff made a policy limits demand of $1,000,000.00 to Travelers on March 27, 2018. Travelers tendered $850,000.00 as an undisputed amount of UM benefits to Plaintiff on May 12, 2018, and it issued the remaining $150,000.00 in benefits to Plaintiff on July 23, 2018. This lawsuit was filed July 19, 2018, and Travelers removed the action to this Court on August 13, 2018. In his Petition, Plaintiff asserts two causes of action against Travelers: breach of contract and bad faith. As will be demonstrated herein, the undisputed facts do not support these claims, and Travelers respectfully submits summary judgment in its favor is proper.

## STATEMENT OF UNDISPUTED FACTS

1.     On September 6, 2017, Plaintiff was a passenger in a commercial delivery truck in the course and scope of his employment with Hahn when the truck was involved in a single-vehicle accident, causing injury to Plaintiff. (Petition, [Doc. 2-1]) (Graves Dep., Ex. 1, pp. 5:4-7; 21:10-22:4; 39:10-42:25) (Plaintiff's Answer to Travelers' First Interrogatories, Ex. 2, No. 9).

2.     The commercial truck involved in the motor vehicle accident was owned by Penske Truck Leasing Co., L.P. ("Penske") and leased to Hahn. (Certificate of Title, Ex. 3, pp. TRAVELERS 00140-00141) (Partial Penske Lease Agreement, Ex. 4, pp. TRAVELERS 00132-00138).

3.     Hahn is the Named Insured under a policy of commercial automobile insurance, Policy Number Y-810-0J686782-TIL-17 (hereinafter "the Policy") issued by Travelers having a coverage period from January 23, 2017 to January 23, 2018. (Policy, Ex. 5, TRAVELERS 00001-00057).

4.     On or about September 7, 2017, Hahn submitted a property damage claim to Travelers for the damage to the Penske vehicle arising out of Plaintiff's accident.  As a part of Hahn's claim, on September 14, 2017 Hahn provided Travelers *__a portion__* of the Penske Lease Agreement to show the vehicle was leased from Penske. (Claim Notes, Ex. 6, p. TRAVELERS 01097-Confidential) (Partial Penske Lease Agreement, Ex. 4, pp. TRAVELERS 00132-00138) (09/14/17 Email, Ex. 7, p. RMS0277) (Mironova Dep., Ex. 8, pp. 54:18-56:10; 57:7-58:12, 58:18-25; 59:15-60:25; 66:21-67:13) (3/01/18 Email, Ex. 9, p. RMS0288).

5.     Travelers was not aware Hahn only provided a portion of the Penske Lease Agreement or that a more complete version existed. (Meyers Dep., Ex. 10, pp. 133:10-134:18) (Mironova Dep., Ex. 8, pp. 54:18-56:10; 57:7-58:12, 58:18-25; 59:15-60:25; 66:21-67:13) (09/14/17 Email, Ex. 7, p. RMS0277).

6.     Regarding Hahn's property damage claim, the Policy provides Physical Damage Comprehensive Coverage for any "loss to a covered 'auto'". (Policy, Ex. 5, TRAVELERS 00025).

3

7.     The Business Auto Coverage Form identifies what constitutes "covered autos" under the Policy.  It provides in relevant part:

> **SECTION I – COVERED AUTOS**
> Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos".  The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

(Policy, Ex. 5, TRAVELERS 0020).

8.     Under Item Two of the Declarations, Physical Property Damage Coverage is available for Covered Autos Designation Symbol "2" and "8".  (Policy, Ex. 5, TRAVELERS 0013).

9.     Covered Auto Designation Symbol "2" is identified as "Owned 'Autos' Only", meaning:

> Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own).  This includes those "autos" you acquire ownership of after the policy begins.

(Policy, Ex. 5, TRAVELERS 0020).

10.     Cover Auto Designation Symbol "8" is identified as "Hired 'Autos' Only", meaning:

> Only those "autos" you **_lease_**, hire, rent or borrow. This does not include any "auto' you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

(Policy, Ex. 5, TRAVELERS 00020)(emphasis added).

11.     For purposes of "Hired Auto Physical Damage Coverage" the Policy provides that "any covered 'auto' you lease, hire, rent or borrow" is "deemed to be [a] covered 'auto[]' you own". (Policy, Ex. 5, pp. TRAVELERS 00032-00033 at 5(b)) (Gross Depo., Ex. 11, pp. 65:23-67:11).

12.     On November 15, 2017, Travelers confirmed "Hired Auto Physical Damage Coverage" for the leased Penske vehicle under "Symbol 2", **as modified by Symbol "8"**. (Policy, Ex. 5, p. TRAVELERS 00028) (Claim Notes, Ex. 6, p. TRAVELERS 01112-Confidential). (Gross Dep., Ex., 11, pp. 65:23-67:11).

13.     On December 21, 2017, Plaintiff's counsel Bret Untershuetz sent a letter of representation via facsimile to Travelers (although it is addressed to State Farm Ins. Co.), requesting Travelers set up an UM/UIM claim for Plaintiff. (12/22/17 Letter of Representation, Ex. 12, TRAVELERS 00161-00166), (Untershuetz Dep. Ex. 13, pp. 11:9-13:9).

14.     The Policy provides uninsured motorist coverage pursuant to an "Oklahoma Uninsured Motorist Coverage – Non-Stacked" Endorsement (hereinafter "UM Endorsement"). The UM Endorsement provides in relevant part:

**A. Coverage**
We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:
                    …
            2.  A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
                    a.  **Anyone "occupying" a covered "auto"** or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
                    …
(Policy, Ex. 5, TRAVELERS 00042) (emphasis added).

5

15.     Under Item Two of the Declarations, Uninsured and Underinsured Motorist Coverage is available for Covered Auto Designation Symbol "2", *i.e.* "Owned 'Autos' Only". (Policy, Ex. 5, TRAVELERS 00013, 20).

16.     The definition for "Owned 'Autos' Only" can be modified by endorsements to the Policy. (Myer Dep., Ex. 10, p. 85:22-24).

17.     The Policy also contains a Lessor – Additional Insured and Loss Payee Endorsement which provides coverage for "leased autos" under a leasing or rental agreement of six (6) months or more (hereinafter "Lessor Endorsement"). (Policy, Ex.5, TRAVELERS 00040-00041).

18.     The Lessor Endorsement defines "leased auto" as:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

(Policy, Ex. 5, TRAVELERS 00041).

19.     Pursuant to the Lessor Endorsement, a vehicle under a long-term lease which meets the definition of "leased auto" "will be considered a covered 'auto' you own and not a covered 'auto' you hire or borrow." (Policy, Ex. 5, TRAVELERS 0041).

20.     In order for the "leased auto" definition in the Lessor Endorsement to modify "Symbol 2" for the purpose of UM/UIM coverage, the language contained in the Penske Lease Agreement had to require Hahn to provide "***direct primary insurance for the lessor.***" (Policy, Ex. 5, pp. TRAVELERS 00013, 20, 40-41) (Meyer Dep., Ex. 10, pp. 88:23-90:2).

21.     The partial Penske Lease Agreement provided by Hahn on September 14, 2017, **did not** contain any language requiring Hahn to provide direct primary insurance for Penske. (Partial Penske Lease Agreement, Ex. 4, pp. TRAVELERS 00132-00138) (Meyer Dep., Ex. 10,

6

pp. 49:17-50:13; 50:24-51:12; 51:21-52-3; 53:23-54:16; 59:2-18; 72:23-73:8) (Gross Dep. Ex. 11, pp. 91:25-94:23; 96:20-97:13; 104:18-105:1; 107:21-23; 119:20-12:11; 122:4-11) (Mironova Dep., Ex. 8, pp. 54:18-56:10; 57:7-58:12, 58:18-25; 59:15-60:25; 66:21-67:13).

22.    On January 3, 2018, Travelers disclaimed UM coverage to Plaintiff because the Partial Penske Lease Agreement did not contain the required language to afford UM coverage under the Policy. Travelers sent a letter to Plaintiff's counsel via email on January 29, 2018 reflecting this decision and via certified mail on January 30, 2018. (1/3/18 Disclaimer Letter, Ex. 14, pp. TRAVELERS 00167-00168) (Claim Notes, Ex. 6, pp. TRAVELERS 01117-01118-Confidential) (Partial Penske Lease Agreement, Ex. 4, pp. TRAVELERS 00132-00138)  (Meyer Dep., Ex. 10, pp. 49:17-50:13; 50:24-51:12; 51:21-52-3; 53:23-54:16; 59:2-18; 72:23-73:8; 80:22-81:3; 83:13-17;  88:23-90:2; 91:17-92:3; 95:20-104:20; 98:16-100:24; 110:7-19; 111:8-22; 131:25-132:3; 133:10-134-5; 135:14-137:7; 142:25-143:23; 146:20-147:18; 152:11-153:12; 161:9-17) (Gross Dep. Ex. 11, pp. 91:25-94:23; 96:20-97:13; 104:18-105:1; 107:21-23; 119:20-12:11; 122:4-11).

23.    On January 31, 2018, Plaintiff's counsel requested Travelers provide a copy of the Policy, declarations page, and endorsements to the Policy. In response, Travelers forwarded a copy of the declaration page, the definition of "Symbol 2" and referred Plaintiff's counsel to the police report showing Penske as the owner of the commercial truck. (1/31/18 Emails, Ex. 15, pp. TRAVELERS 00237-00240) (Meyer Dep. Ex. 10, pp. 48:10-18; 95:23-97:19; 98:16-100:24; 105:19-24; 106:19-107:17; 108:10-109:16; 131:25-132:3; 133:10-134-5; 135:14-137:7; 146:20-147:18; 152:11-153:12; 161:9-17).

24.    On February 23, 2018, Plaintiff's current counsel, Marlin Davis, requested information regarding Medical Payments coverage on the Policy. This, couple with earlier

7

discussions with Plaintiff's counsel and internal discussions, prompted further investigation by Travelers about the lease agreement with Penske. (2/23/18 Letter to Travelers, Ex. 16, pp. TRAVELERS 00176-00178) (3/1/18 Letter to Marlin R. Davis, Ex. 17, pp. TRAVELERS 00179) (Claim Notes, Ex. 6, pp. TRAVELERS 01119-Confidential – 01120-Confidential) (Meyer Dep., Ex. 10, pp. 120:16-18; 123:13-125:10; 126:2-21).

25.    Because of discussions with Plaintiff's counsel and the internal discussions, on March 1, 2018 Travelers requested Hahn provide a complete copy of the Penske Lease Agreement to Travelers for review. (03/01/18 Email, Ex. 9, p. RMS0288) (3/12/18 Emails, Ex. 18, pp. TRAVELERS 00241-00242)(Meyer Dep., Ex. 10 at p. 132:4 – 133:9).

26.    After multiple phone calls and emails were sent to Hahn requesting a complete copy of the Penske Lease Agreement, on March 12, 2018 Travelers received a full and complete copy of the Penske Lease Agreement. (Claim Notes, Ex. 6, pp. TRAVELERS 01123-Confidential – 01124-Confidential) (Full Penske Lease Agreement, Ex. 19, pp. TRAVELERS 05200-05215) (Mironova Dep. Ex 8, pp. 66:21-67:13).

27.    After receiving the Full Penske Lease Agreement, it was determined the terms of the Penske Lease Agreement did in fact require Hahn provide direct primary insurance for Penske.  As such, the following day on March 13, 2018, Travelers acknowledged coverage existed and extended UM benefits to Plaintiff. (Full Penske Lease Agreement, Ex. 19, pp. TRAVELERS 05213-05214) (Claim Notes, Ex. 6, pp. TRAVELERS 01124-Confidential – 01125-Confidential) (3/13/18 Email, Ex. 20, p.   GRAVES 0018) (Meyer Dep. Ex. 10, pp. 119:17-120:9; 122:7-17; 151:23-152:18).

28.    Hahn's person most knowledgeable about the lease agreement, Volha Mironova, testified on behalf of Hahn that she did not send the Full Penske Lease Agreement to Travelers

initially, as she did not understand there was a difference between the "Certificate of Lease" and the Full Penske Lease Agreement. She also testified Hahn and Metro Appliances had merged, and it was difficult finding documents. (Mironova, Ex. 8 at p. 55:5 – 56:10; p. 58:1 – 12; p. 60:10 – 25).

29.     On March 27, 2018, Plaintiff made a policy limit demand of $1,000,000.00 to Travelers. (3/27/18 Letter (without enclosures), Ex. 21, pp. GRAVES 0020-0022).

30.     On April 5, 2018, Travelers provided Plaintiff's counsel a copy of the Policy and the full Penske Lease Agreement, and requested Plaintiff execute a Medical Authorization to enable Travelers to investigate Plaintiff's claim and determine the extent of Plaintiff's injuries. (4/5/18 Email, Ex. 22, p. TRAVELERS 00243).

31.     Plaintiff's counsel provided Travelers an executed Medical Authorization on April 17, 2018. (4/17/18 Letter (without enclosure), Ex. 23, pp. TRAVELERS 00224).

32.     On May 14, 2018, Travelers was informed SFIC was asserting its right to subrogation as the workers' compensation carrier who had been paying for both medical treatment and income benefits to Plaintiff. (5/14/18 Email, Ex. 24, p. TRAVELERS 00249).

33.     Based on the information gathered by Travelers since March of 2018, on May 15, 2018, Travelers issued payment to Plaintiff in the amount of $850,000.00. The check was made payable to Marlin R. Davis, PC, Plaintiff, and SFIC. (Claim Notes, Ex. 6, p. TRAVELERS 01137-Confidential) ($850,000.00 Check, Ex. 25, p. TRAVELERS 01149-Confidential – 01151-Confidential).

34.     After payment of the $850,000.00 in UM benefits to Plaintiff, it was learned in July of 2018 by Travelers that an additional $481,399.84 in future medical and other benefits were being set aside by Plaintiff's workers' compensation carrier for Plaintiff, and although no

future treatment had been received, the decision was made to tender the remaining $150,000.00

in UM benefits to Plaintiff.  (7/19/18 Email, Ex. 26, pp. TRAVELERS 00254-00255) (Claim

Notes, Ex. 6, p. TRAVELERS 01140-Confidential) (Bass Dep., Ex. 27, p. 27:3-22).

35.     On July 23, 2018, Travelers issued Plaintiff a check made payable to Marlin R.

Davis, PC, and Plaintiff in the amount of $150,000.00. ($150,000.00 Check, Ex. 28, p.

TRAVELERS 01153-Confidential).

36.      Plaintiff's counsel confirmed receipt of the $150,000.00 check on July 26, 2018.

(7/26/18 Letter, Ex. 29, p. GRAVES 0204).

37.     On July 19, 2018, Plaintiff filed the instant action against Travelers and SFIC.

[Doc. 2-1]. In his Petition, Plaintiff asserted claims against Travelers for breach of contract and

bad faith. In addition, Plaintiff asserted a claim for declaratory relief against SFIC asserting the

workers' compensation subrogation statute was unconstitutional.

38.     On November 20, 2019, after settling SFIC's subrogation claim, Plaintiff

dismissed SFIC from this lawsuit. [Doc. 74]. (12/12/19 Letter Sutton to DeWitt, Ex. 30).

## ARGUMENT AND AUTHORITY

Summary judgment is appropriate where there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56. Rule 56(c)

requires the entry of summary judgment against a party who fails to present evidence sufficient

to establish the existence of an essential element to that party's case, and upon which the party

will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'" *Id.* at 327.

Although a court must view all facts in the light most favorable to the nonmoving party at the summary judgment stage, "the nonmoving party must, at a minimum, direct the court to *facts* which establish a genuine issue for trial." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) (emphasis in original).  In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely upon unsupported allegations without any significant probative evidence tending to support the complaint." *Id.* (citation and quotations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."). Thus, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citations omitted).

**PROPOSITION I:   TRAVELERS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BAD FAITH CLAIM BECAUSE TRAVELERS HAD A REASONABLE BASIS FOR ITS ACTIONS**

An insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Christian v. Amer. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977). Violation of this duty gives rise to an action in tort. *Id*. "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1360 (Okla. 1989).

In order to maintain a *prima facie* case against an insurance company for a delay in

payment of a first-party claim, a plaintiff must establish: (1) the claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. *Beers v. Hillory*, 241 P.3d 285, 292 (Okla. Civ. App. 2010). "[T]he minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against said insurer." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1094 (Okla. 2005).

The Oklahoma Supreme Court has made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage.  "If there is a legitimate dispute concerning coverage or no conclusive precedential legal authority requiring coverage, withholding or delaying payment is not unreasonable or in bad faith." *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 725 (Okla. 2009). "Because disagreements may arise over the amount of coverage, the cause of loss, and breach of the policy conditions, the duty of good faith and fair dealing does not preclude the insurer's right to deny a claim, resist payment, or litigate any claim to which the insurer has a legitimate defense." *Hale v. A.G. Ins. Co.*, 138 P.3d 567, 573 (Okla. Civ. App. 2006) (citing *Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000)). Thus, the critical question in a bad faith tort claim is whether the insurer had a "good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000); *Buzzard v. McDanel* (Buzzard I), 736 P.2d 157, 159 (Okla. 1987); *Badillo*, 121 P.3d at 1094; *See also Tran v. Nationwide Mut. Ins. Co.*, 2012 WL 380359 (N.D. Okla. Feb. 6, 2012) (holding "mere delay in the payment of benefits is not enough to establish bad faith").  "Insurers are free to make

legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds." *Bailey v. Farmers Ins. Co., Inc.*, 137 P.3d 1260, 1264 (Okla. Civ. App. 2006); *Nat'l Mut. Cas. Co. v. Britt*, 218 P.2d 1039, 1042 (Okla. 1950) ("It takes something more than mere mistake to constitute bad faith.") (citation omitted). "Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law". *Beers*, 241 P.3d at 293 (*citing Manis v. Hartford Fire Ins. Co*., 681 P.2d 760, 761-62 (Okla. 1984); *Buzzard v. Farmers Ins. Co., Inc.* (Buzzard II), 824 P.2d, 1105, 1109 (Okla. 1991)).

A.    **Travelers' original disclaimer of coverage was justified and reasonable based on the information available at the time the decision was made.**

It is undisputed the coverage provided to Hahn, the named insured, and any other covered person is subject to the Policy terms. (Statement of Undisputed Facts ("SUF") Nos. 3, 12, 27). In this regard the undisputed facts show as a part of Hahn's property damage claim Travelers requested Hahn provide it with the lease agreement for the delivery truck at issue. (SUF No. 4). However Hahn provided Travelers only a portion of the Penske Lease Agreement, and as testified to by Hahn, it was not aware there was any difference between the "Certificate of Lease" sent to Travelers and the actual, Full Penske Lease Agreement. (SUF Nos. 4, 5, 28). Although only a portion of the lease agreement was sent in relation to the property damage claim, the language in the Certificate of Lease was sufficient with regard to the property damage claim to afford Hahn coverage for their property damage claim. (SUF Nos. 4, 6, 11-12).

It was only after payment of Hahn's property damage claim that Plaintiff, through his attorney, submitted a separate UM claim on Plaintiff's behalf. Unbeknownst to Travelers, when Hahn provided what they believed to be the Penske Lease Agreement, it was not ***the Full Penske Lease Agreement***. (SUF Nos. 4, 5, 21, 22, 25 - 26). As such, when Plaintiff submitted his UM

claim on December 27, 2017, the lease agreement provided by Hahn and contained in Travelers' file, did not contain any language requiring Hahn provide direct primary insurance. (SUF nos. 4, 5, 21, 22, 25 - 26). Since there was no information which would have modified the definition of Symbol "2" ("Owned Auto") per the Lessor Endorsement, there was no UM coverage available to Plaintiff. (SUF Nos. 2, 4, 5, 7, 8, 9, 14- 23).

Based upon the information Travelers knew to exist and in its possession at the time its performance was requested, UM coverage was not available because the leased Penske vehicle did not meet the definition of Symbol "2" under the Policy. Therefore, Travelers disclaimed coverage for Plaintiff's UM/UIM claim on January 3, 2018, one week after receiving Plaintiff's demand. (SUF Nos. 4, 5, 14-23).  As soon as Travelers received full Penske Lease Agreement from Hahn on March 12, 2018 showing Hahn ***was required*** to provide direct primary insurance for Penske, Travelers immediately afforded UM coverage to Plaintiff on March 13, 2018. (SUF Nos. 27 - 36). It is also undisputed Plaintiff received $850,000.00 in UM benefits in less than five (5) months after submission of his claim. (SUF no. 33).

The applicable test in Oklahoma is not whether Travelers' decision was ultimately correct, but rather whether the decision justifiable and reasonable based on the information available **at the time Travelers' performance was requested**. *Newport*, 11 P.3d. at 195 (emphasis added). As the undisputed facts make plain, when Travelers initially disclaimed UM coverage, it was done according to the language of the Policy **and** the available information provided by Hahn, its named insured. (SUF Nos. 3-5, 7, 9, 14-23). This disclaimer was justified and reasonable under the circumstances, as Travelers did not know, and did not have any reason to know at the time that a more comprehensive Penske Lease Agreement existed. (SUF Nos. 4, 5, 28). As such, Oklahoma law does not support a claim of bad faith against Travelers, and

14

summary judgment is proper.

**B.      A legitimate dispute existed as to the value of Plaintiff's claim.**

With coverage established less than two months after Plaintiff's UM claim, Travelers actively began investigating Plaintiff's UM claim, including reviewing the available medical records and bills. (SUF Nos. 29-32). Even though Travelers had not yet completed its investigation, based on the information gathered and the severity of the injuries identified in the medical records and bills reviewed, on May 15, 2018 (less than two (2) months after Plaintiff made a policy limit demand), Travelers issued payment of $850,000.00 to Plaintiff as the undisputed portion of his UM/UIM claim. (SUF Nos. 33).

After this, Travelers undertook more investigation into Plaintiff's injuries, speaking with SFIC regarding the workers' compensation claim. (SUF No. 34). Although no other medical treatment was received by Plaintiff at that time, it was learned Plaintiff's workers' compensation carrier had estimated approximately $400,000.00 in future medical benefits, and at that time in July of 2018, Travelers tendered the remaining $150,000.00 in UM benefits to Plaintiff. (SUF No. 34).

The actions of Travelers once it was determined Plaintiff was entitled to UM benefits was reasonable as a matter of law. As set forth by the Oklahoma Supreme Court, and relied upon by federal district courts, an insurer cannot commit bad faith by merely taking time to investigate and evaluate a claim. If an insurer is justified in its actions, then no bad faith claim lies against the insurer. Here, Travelers was indeed justified in its actions, as the timing of the evaluation and submission of payment of the $850,000.00 on May 15, 2018 was reasonable. (SUF No. 33). Given the available information, including Plaintiff's available medical records and bills, SFIC's then existing subrogation interest, and other considerations, Travelers payment of $850,000.00

was reasonable and a good faith attempt to provide Plaintiff his benefit under the Policy. Further, upon receipt of new information, *i.e.* SFIC's estimated future medical interest of $481,399.84, Travelers increased its evaluation and proceeded to issue the remaining $150,000.00 payment to Plaintiff. (SUF Nos. 35, 36).

Oklahoma law is clear on the subject of legitimate disputes between and insurer and its insured. If a legitimate dispute exists as to the value of a claim, no bad faith exists on the part of the insurer. *Buzzard II*, 824 P.2d at 1109. Once Plaintiff submitted his policy limits demand in late March, 2018, the undisputed facts establish Travelers and its employees quickly and efficiently investigated and evaluated Plaintiff's UM claim. Plaintiff was provided the undisputed amount of $850,000.00 based on its initial investigation within a month and a half of the policy limit demand. (SUF Nos. 33). After receiving additional information, Travelers issued the remaining payment of $150,000.00, exhausting the Policy limits. (SUF Nos. 34). There can be no genuine dispute, given the facts presented, that Travelers acted justifiably and reasonably upon the information at its disposal when handling Plaintiff's claim. Therefore, Plaintiff's cause of action for bad faith against Travelers must fail as a matter of law and summary judgment in Travelers favor is appropriate.

**PROPOSITION II:   TRAVELERS DID NOT BREACH THE INSURANCE CONTRACT
BECAUSE IT PAID THE POLICY BENEFIT IN FULL**

To recover for breach of the insurance contract, Plaintiff must establish: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). "A contract is breached or broken when a party does not do what [he/she/it] promised to do in the contract." OUJI 23.21. In Oklahoma, an insurer's liability for breach of a UM/UIM insurance contract is limited to the

amount of the UM/UIM policy coverage. *See Carney v. State Farm Mut. Auto. Ins. Co.*, 877 P.2d 1113, 1119 (Okla. 1994).

> UM coverage merely provides a source of recovery for personal injuries when an innocent victim cannot otherwise recover from the tortfeasor. The UM carrier is liable for damages caused by the tortfeasor and for statutorily mandated prejudgment interest on those damages. **But the carrier's liability is limited by the contract, and we find no public policy reason to extend that liability beyond the terms of the contract**.

*Id.* (emphasis added).

This Court recently addressed a case similar to the one at hand where the Plaintiff sued its insurer for breach of contract when the policy limits were paid in full. In *Watson v. Farmers Ins. Co., Inc.*, 23 F. Supp.3d 1342 (N.D. Okla. 2014), the plaintiff was involved in an accident wherein he suffered injuries. Upon learning both plaintiff and the tortfeasor were insured by Farmers, a separate claims adjuster was called upon to handle plaintiff's underinsured ("UIM") claim. After reviewing the claim, the UIM adjuster informed plaintiff Farmers did not value his claim in excess of the tortfeasor's policy limits and his UIM claim would be suspended. The plaintiff filed suit and later had a surgery related to the accident. After the surgery, Farmers paid the full UIM policy benefit to the plaintiff. *Watson*, 23 F. Supp.3d at 1434.

Plaintiff filed his action, and Farmers then sought summary judgment on the issue of breach of contract, as well as bad faith. This Court noted the Oklahoma Supreme Court has articulated a distinction between contract damages, which are limited to the policy limit, and additional damages from a tort of bad faith. Because Farmers paid the policy limit, this Court held plaintiff could not show contractual damages, thus rendering the breach of contract claim moot. Therefore, summary judgment was granted in favor of Farmer's on the plaintiff's breach of contract claim. *Watson*, 23 F. Supp.3d at 1351; *See also Owens v. Res. Life Ins. Co.*, 2007 WL 2607845 (N.D. Okla. 2007) (holding that even if the defendant originally breached the policy,

the plaintiff received her remedy for breach of contract as the insurer paid the contract amount); *Tran v. Nationwide Mut. Ins. Co.*, 2012 WL 380359 (N.D. Okla. Feb. 6, 2012) (holding plaintiff could not present evidence insurer breached its contract where the undisputed amount of plaintiff's economic damages had been paid); *Nematpour v. GEICO Gen. Ins. Co.*, 2016 WL 9022866 (W.D. Okla. June 21, 2016) (holding insurer was entitled to summary judgment on plaintiff's breach of contract claim because insurer tendered the policy limits in full).

Here, like *Watson*, Travelers paid the $1,000,000.00 UM Policy limits to Plaintiff. (SUF Nos. 33, 39, 40). Since all available benefits under the Policy have been exhausted, Plaintiff cannot, as a matter of law, establish a breach of contract claim against Travelers. Therefore, summary judgment should be entered on behalf of Travelers.

## PROPOSITION III: PUNITIVE DAMAGES ARE NOT WARRANTED AS A MATTER OF LAW

Under Oklahoma law, absent a viable tort claim Plaintiff is not entitled to seek punitive damages. 23 O.S. § 9.1; *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762, (Okla. 1984); *Norman's Heritage Real Estate Co. v. Aetna Cas. & Sur. Co.*, 727 F.2d 911, 916 (10th Cir. 1984). Where a legitimate dispute exists as to the value of a claim for benefits as here, punitive damages are not warranted. This is because "[t]o hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims. Insurance companies have the right to dispute a claim in good faith." *Manis*, 681 P.2d at 762. Because Travelers had a reasonable justification for its evaluation and payment of Plaintiff's claim, there is no basis for submission of a punitive damage instruction.

Further, even if a tort claim exists, for Plaintiff's punitive claim to survive he must prove by ***clear and convincing evidence*** a reckless disregard or intentional and malicious breach of the duty of good faith. 23 O.S. § 9.1(B),(C).  Even if the Court were to find sufficient evidence to

submit Plaintiff's claim of bad faith to a jury, "punitive damages do not *ipso facto* follow from every breach [of an insurer's duty to deal fairly and in good faith]". *McLaughlin v. Nat'l Ben. Life Ins. Co.*, 772 P.2d 383, 383-384 (Okla. 1988) (internal quotations omitted); *Buzzard II*, 824 P.2d at 1115. Only if the insurer's actions were done with the requisite malice will such a request survive.

Here, Plaintiff cannot point to evidence to suggest Travelers' conduct was done with a reckless disregard or was intentional and malicious. In fact, the undisputed facts make clear Travelers handled the claim appropriately, using the facts at hand in applying the applicable policy provision. (SUF Nos. 4, 5, 7, 9, 14-23, 25-27, 33, 38-41). Ultimately, Plaintiff was provided the full and complete benefit of the Policy, resulting in payments totaling $1,000,000.00 – a mere seven (7) months after the UM/UIM claim was submitted. (SUF Nos. 13, 33, 35, 40, 41). Travelers respectfully submits Plaintiff cannot meet the higher standard of ***clear and convincing evidence*** to support the inference of punitive damages. Since there is no material facts to support a claim of punitive damages, Travelers is entitled to summary judgment as a matter of law.

## CONCLUSION

WHEREFORE, premises considered, Defendant Travelers Property Casualty Company of America respectfully requests the Court grant its motion and enter judgment in its favor as to all claims of Plaintiff.

Respectfully submitted,


s/Melanie K. Dittrich
Derrick T. DeWitt, OBA #18044
Melanie K. Dittrich, OBA #30846
L. Grant Gibson, OBA #33513
DeWITT PARUOLO & MEEK, PLLC
P.O. Box 138800
Oklahoma City, OK  73113
T: (405) 705-3600
F: (405) 705-2573
*Attorneys for Defendant*
*Travelers Property Casualty Company of America*


## CERTIFICATE OF SERVICE

This is to certify that on the 19th day of August, 2020, the above document was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Anthony P. Sutton
Marlin R. Davis
*Attorneys for Plaintiff*


s/Melanie K. Dittrich